■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PETER B. GOLDBLATT, Appellant. [950 NYS2d 210]—

Kavanagh, J. Appeal from a judgment of the County Court of Warren County (Hall, J.), rendered February 4, 2011, upon a verdict convicting defendant of the crimes of aggravated vehicular homicide, vehicular manslaughter in the first degree, manslaughter in the second degree (two counts), assault in the third degree, reckless endangerment in the second degree, driving while intoxicated (two counts) and reckless driving.

At about 11:20 p.m. on June 24, 2010, defendant was driving a sport utility vehicle south on Golf Course Road in the Town of Warrensburg, Warren County. Seven individuals who worked at nearby Camp Echo Lake were standing off the west side of the road at a trailhead. Defendant's vehicle, traveling at an estimated speed of 55 miles per hour in a 40 mile-per-hour zone, went partially off the road striking and killing two young adults. When State Police arrived, they observed defendant to be visibly

intoxicated. He initially refused to take a breath test, but submitted to a test about two hours later, recording a blood alcohol content of .11%, which was extrapolated to have been approximately .158% (nearly twice the legal limit) at the time of the accident. Defendant was indicted for aggravated vehicular homicide, vehicular manslaughter in the first degree, manslaughter in the second degree (two counts), reckless driving, driving while intoxicated (two counts), assault in the third degree, and reckless endangerment in the second degree. A jury convicted him of all counts and County Court sentenced him to concurrent prison terms, the longest of which was $8^{1}/_{3}$ to 25 years for the aggravated vehicular homicide conviction. Defendant appeals, arguing that his conviction of the top count of the indictment—aggravated vehicular homicide—was not supported by legally sufficient evidence and was against the weight of the evidence, and that County Court erred in its jury instructions regarding that count.

The crime of aggravated vehicular homicide was added to the Penal Law in 2007 (see L 2007, ch 345, § 2) as part of legislation creating stricter laws with strong penalties for those who cause personal injury or death to others when driving while intoxicated (see Senate Introducer Mem in Support, 2007 McKinney's Session Laws of NY at 1857-1858). The elements of aggravated vehicular homicide are statutorily defined as being comprised of two existing crimes, reckless driving (see Vehicle and Traffic Law § 1212) and vehicular manslaughter in the second degree (see Penal Law § 125.12), as well as any one of seven exacerbating factors, which, as relevant here, include "caus[ing] the death of more than one other person" (Penal Law § 125.14 [4]).[1] It is undisputed that the evidence sufficiently established vehicular manslaughter in the second degree and the exacerbating factor of more than one death. Defendant argues, however, that the evidence did not demonstrate that he engaged in reckless driving.

Reckless driving consists of "driving or using any motor vehicle . . . in a manner which unreasonably interferes with the free and proper use of the public highway, or unreasonably endangers users of the public highway" (Vehicle and Traffic Law § 1212). It is a misdemeanor with a maximum punishment for a first offense of a $300 fine and 30 days in jail (see Vehicle

---

1. Aggravated vehicular homicide can also generally be viewed as the crime of vehicular manslaughter in the first degree (see Penal Law § 125.13) plus reckless driving.

and Traffic Law §§ 1212, 1801).[2] It has long been recognized that reckless driving "calls for evidence showing something more than mere negligence" (*People v Grogan*, 260 NY 138, 143 [1932]; *see Matter of Sheridan v Fletcher*, 270 App Div 29, 32 [1945]). Determining whether conduct rises to the level of unreasonable interference or endangerment such that it constitutes the requisite recklessness involves the presence of additional aggravating acts or circumstances beyond a single violation of a rule of the road (*see People v Grogan*, 260 NY at 143-144; *People v Lamphear*, 35 AD2d 305, 308 [1970]; *see generally* Carrieri, Practice Commentaries, McKinney's Cons Laws of NY, Book 62A, Vehicle and Traffic Law § 1212 at 47-48; Campbell, Fisher and Mansfield, Defense of Speeding, Reckless Driving and Vehicular Homicide § 13.02; *cf. People v Frisbie*, 114 AD2d 587, 588-589 [1985]). Thus, although violating the speed limit may not be enough by itself, speed plus crossing into the passing lane when the view of oncoming traffic is not clear is sufficient (*see People v Armlin*, 6 NY2d 231, 232-233 [1959]; *People v Lamphear*, 35 AD2d at 308-309). Similarly, merely making a U-turn would not constitute reckless driving, but doing so across three lanes of traffic on a parkway could be considered reckless (*see People v McGrantham*, 12 NY3d 892, 893-894 [2009]).

We have previously indicated that the voluntary use of alcohol or drugs before driving may be considered as a factor in the reckless driving analysis (*see People v Bohacek*, 95 AD3d 1592, 1594-1595 [2012]; *People v Ladd*, 224 AD2d 881, 882 [1996], *affd* 89 NY2d 893 [1996]). Nonetheless, it is the manner of operation that is the important inquiry. "One can drive recklessly without being intoxicated and, [conversely], one can drive while intoxicated without being reckless" (*People v Starowicz*, 207 AD2d 994, 994 [1994], *lv denied* 84 NY2d 1016 [1994] [citations omitted]). In addition, where, as here, reckless driving is an element that elevates a crime, the focus for the reckless driving element is the manner of operation. Thus, we consider the legal sufficiency and weight of the evidence regarding the reckless driving element of the crime of aggravated vehicular homicide by such standard.

Here, when the proof is viewed in the light most favorable to the People (*see People v Delamota*, 18 NY3d 107, 113 [2011]; *People v Diaz*, 15 NY3d 764, 765 [2010]), there was a confluence of factors such that reckless driving was established by legally sufficient proof. There was proof that defendant disregarded a

---

**2.** However, in the context of the pertinent section of the Penal Law, it serves to elevate a potential C felony to a B felony.

sign warning of an approaching reduced speed zone and he entered the subsequent speed zone without reducing his speed toward 40 miles per hour as required, but instead continued at about 55 miles per hour. He failed to maintain his vehicle on the road; it moved toward the shoulder and continued across the paved shoulder onto the gravel and sand next to the road and into the area where the pedestrians were standing. There was no apparent effort to slow the vehicle as it went off the road onto the gravel and grass, or to correct the errant path. There was testimony that no pedestrian in the group stood on any paved part of the roadway at any time and that they had moved at least several steps from the road prior to the accident. One of the individuals who was struck and killed was initially standing on a cement lip away from the fog line and asphalt shoulder, and she and the others walked even further from the road toward the trees when one member of the group announced, upon seeing defendant's vehicle about a quarter of a mile away, that a vehicle was approaching. It was estimated that the closest person to the road at the moment of impact was at least five feet off the paved portion.

The group of pedestrians had just come from a "Mad Hatter" party sponsored by the camp where they worked, and their festive attire included a bright orange hat and aluminum foil. One of the individuals who was struck had glow stick rings through the elongated piercings of his ears. Another individual in the group was in the process of lighting a cigarette. It was dry and clear with nearly a full moon lighting the sky, and a lamppost was in the vicinity. Despite good visibility and the pedestrians' bright clothing and glowing objects, defendant failed to observe them. In fact, he told police that they were in the road and that one was on a bicycle (which was not established by any evidence). Indeed, items belonging to the victims, as well as pieces of defendant's vehicle, were found well off the roadway by investigators. Considered cumulatively, there was ample proof of reckless driving by the combination of excessive speed, going off the road, the distance off the road, no effort to slow down once off the road, and failing to see the pedestrians despite their bright attire and the prevailing clear conditions.

Turning to defendant's weight of the evidence argument, since an acquittal on the aggravated vehicular homicide count would not have been unreasonable, we must weigh the conflicting testimony and review the rational inferences that may be drawn from the evidence in determining whether the jury justifiably found defendant guilty of this count beyond a reasonable doubt (*see People v Danielson*, 9 NY3d 342, 348 [2007]; *People v*

*Romero*, 7 NY3d 633, 643-644 [2006]). Defendant's expert, an engineer, testified that the street lamps in the vicinity made it more difficult to see anything off the road and he also opined that the victims were actually in the roadway when they were hit. This evidence, as well as other proof presented by defendant, created credibility issues that the jury resolved against defendant. Upon a review of the record and according "[g]reat deference" to the jury's "opportunity to view the witnesses, hear the testimony and observe demeanor" (*People v Bleakley*, 69 NY2d 490, 495 [1987]), we are unpersuaded that defendant's conviction of aggravated vehicular homicide was against the weight of the evidence.

We consider next defendant's argument that County Court erred by failing to instruct the jury that its analysis of the reckless driving element of aggravated vehicular homicide should focus on whether defendant's manner of operating the vehicle violated the statutory language of Vehicle and Traffic Law § 1212 without regard to defendant's intoxication. A charge is sufficient where, taken as a whole, it conveys the correct standard to the jury (*see People v Medina*, 18 NY3d 98, 104 [2011]; *People v Russell*, 266 NY 147, 153 [1934]), and isolated errors in the charge generally do not mandate reversal (*see People v Umali*, 10 NY3d 417, 426-427 [2008], *cert denied* 556 US 1110 [2009]; *People v Drake*, 7 NY3d 28, 32 [2006]). A significant part of defendant's defense to the top charge in the indictment was premised upon his argument that intoxication should not be used as part of two separate elements in the same crime, i.e., for the intoxication element of vehicular manslaughter and also to show reckless driving. Defense counsel made such an argument before the jury in summation. When the prosecutor made a statement in summation indicating that the jury should consider intoxication as part of reckless driving, defense counsel objected. County Court did not rule on the objection, but stated that it would "explain it all to the jury."

At the close of summations, defense counsel moved for a mistrial based upon the prosecutor's statement. Considerable discussions ensued both about the motion and then about County Court's charge to the jury. The court denied the mistrial motion and appeared to indicate that it agreed with defense counsel that, in the context of aggravated vehicular homicide, the People had to show reckless driving[3] independent of intoxication. Nevertheless, the court refused to give a clarifying instruction as requested by defendant.

---

**3.** There was also discussion regarding the fact that reckless driving should not be confused with acting recklessly, which is a statutorily defined element

Three of the four questions from the jury during its deliberation reflected that it was struggling with the proper standard for reckless driving. First, the jury requested that the charge on aggravated vehicular manslaughter be reread and asked whether recklessness had the same definition in all charges. Next, it requested a rereading of the reckless driving charge with a written, underlined definition.[4] Finally, the jury asked, "Is reckless driving only refe[r]ring to the physical operation of the vehicle? ie, being driven erratically."

Defendant argues and the concurring opinion agrees that the jury should have been instructed that it could not consider evidence of defendant's intoxication to prove the reckless driving element of aggravated vehicular manslaughter. In that regard, there is no doubt that the jury should have been instructed that intoxication, absent more, does not establish reckless driving. However, it does not follow that evidence of an individual's intoxication and how that condition may have affected his or her ability to perceive and react to risks commonly encountered while operating a motor vehicle on a public highway is not relevant or admissible to establish that the motor vehicle was being operated recklessly when it was involved in a fatal accident (*see generally People v Bohacek*, 95 AD3d at 1594; *People v Heidgen*, 87 AD3d 1016, 1024 [2011], *lv granted* 17 NY3d 957 [2011]; *People v Ladd*, 224 AD2d at 882).[5]

Since the jury was not properly instructed as to what was required to find that defendant was recklessly driving his automobile when involved in this fatal accident, his conviction for aggravated vehicular homicide must be reversed and the matter remitted for a new trial on that charge[6] (*see People v Medina*, 18 NY3d at 104).

---

(*see* Penal Law § 15.05 [3]) of manslaughter in the second degree (*see* Penal Law § 125.12 [1]), a crime with which defendant was also charged.

4. The People objected to giving the jury a written definition, and County Court thus only reread the charge.

5. The concurring opinion regarding the admissibility of this evidence is based in large measure on the concern that "[p]ermitting intoxication to be used twice will likely have the practical effect of vehicular manslaughter in the first degree . . . routinely becoming the higher offense of aggravated vehicular homicide." However, an appropriate charge to the jury—one that instructs the jury that intoxication by itself does not constitute reckless driving but, at the same time, allows such evidence to be considered in making that crucial determination—in our view, adequately addresses that concern.

6. Vehicular manslaughter in the first degree (count 2), reckless driving (count 5) and driving while intoxicated (counts 6 and 7) are lesser included offenses of aggravated vehicular homicide (*see* Penal Law §§ 125.12, 125.13 [4]; 125.14; Vehicle and Traffic Law § 1212; *People v Bain*, 85 AD3d 1193, 1194 [2011], *lv denied* 17 NY3d 902 [2011]; *People v Osborne*, 60 AD3d 1310, 1310-

Spain, Malone Jr. and McCarthy, JJ., concur.

Lahtinen, J.P. (concurring). I agree with the majority's conclusion that a new trial is necessary on count 1, aggravated vehicular homicide. Respectfully, I write separately because I would hold that a jury should be instructed not to consider a defendant's intoxicated condition[1] when weighing the reckless driving element of the crime of aggravated vehicular homicide. Stated another way, when reckless driving is weighed as an element of aggravated vehicular homicide, the jury's focus for that element should be limited to the driver's manner of operation rather than the driver's condition. The driver's condition—intoxication—is already an essential part of other elements of the crime of aggravated vehicular homicide and should not be used twice to establish separate elements of a single crime.

Permitting one factor (such as intoxication) to be considered twice in enhancing a single crime is not favored (*see generally People v Phelps*, 211 Ill 2d 1, 12-13, 809 NE2d 1214, 1221 [2004]) and should not occur absent clear and specific legislative direction (*cf. Simpson v United States*, 435 US 6, 14-15 [1978]). Permitting intoxication to be used twice will likely have the practical effect of vehicular manslaughter in the first degree (a class C felony) routinely becoming the higher offense of aggravated vehicular homicide (a class B felony) without any meaningful additional proof required to raise the level of criminality. Such a result is contrary to the graduated culpability reflected by different felony levels ascribed by the Legislature to these crimes (*cf. People v Suarez*, 6 NY3d 202, 206-207 [2005]).

The statutory definition of reckless driving in Vehicle and Traffic Law § 1212 proscribes a specifically described manner of operation of a vehicle.[2] Where, as here, that manner of operation serves to elevate to class B felony status a crime that is al-

1311 [2009], *lv denied* 12 NY3d 919 [2009]) and, therefore, should have been submitted to the jury as alternative counts or, upon defendant's conviction of the greater offense, should have been dismissed (*see* CPL 300.40 [3] [b]). However, defendant has specified that on this appeal he is only challenging the conviction for aggravated vehicular homicide and not the other convictions. Accordingly, in the event that the retrial results in a conviction on the aggravated vehicular homicide charge, the lesser included charges must be dismissed.

**1.** The current case involves intoxication and I have limited my discussion to such condition. However, the same analysis would apply if the underlying condition consisted of alcohol and drugs, or drugs alone (*see* Penal Law § 125.12 [1]).

**2.** As noted by the majority, care must be taken not to confuse "recklessly" as defined for purposes of the Penal Law (*see* Penal Law § 15.05 [3]) with the separately defined misdemeanor of reckless driving contained in Ve-

ready a class C felony as a result of intoxicated driving causing death (*see* Penal Law § 125.13), the jury should be instructed to focus solely on the proscribed manner of operation as statutorily defined in Vehicle and Traffic Law § 1212 when considering the reckless driving element.

There may be cases where reckless driving is so apparent that failure to properly instruct the jury regarding such element would be harmless error. For example, driving a vehicle at a high rate of speed in the wrong direction on an expressway or driving at a high rate of speed through a series of city red lights are acts that squarely fall within the definition of reckless driving. In the current case, the issue was not as clear as these examples. Defendant premised much of his defense on challenging the reckless driving element of count 1 and specifically requested that the jury be instructed not to weigh his intoxication when considering such element. This tragic case is close on the element of reckless driving and, despite specific requests by defendant, inadequate instructions were given to the jury. Accordingly, I agree with the majority that a new trial must be conducted on this count of the indictment.

Ordered that the judgment is modified, on the law, by reversing defendant's conviction of aggravated vehicular homicide under count 1 of the indictment and vacating the sentence imposed thereon; matter remitted to the County Court of Warren County for a new trial on said count; and, as so modified, affirmed.

hicle and Traffic Law § 1212, which carries a maximum punishment of a $300 fine and 30 days in jail for a first offense (*see* Vehicle and Traffic Law § 1801).